STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2004 JUN 23 P 1: 48

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-239

DEANNA VINCENT,

Plaintiff

v.

ORDER

MELINDA MOLIN, M.D., et al,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

JUL 26 2004

Before the court is defendant Mercy Hospital's motion for summary judgment. After the motion was fully submitted, plaintiff filed a motion for leave to supplement her opposing statement of material facts to add references to certain deposition testimony that had not been available at the time the motion was briefed. No opposition was filed to that motion, and the court therefore accepts and has reviewed plaintiff's supplemental opposing statement of material facts, filed May 14, 2004.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310 (construing former Rule 7(d)). The facts must be considered in the light most favorable to the non-moving party. E.g., Panasonic Communications & Systems Co. v. State of Maine, 1997 ME 43, ¶10, 691 A.2d 190, 194. Thus, for purposes of summary

judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Harkness v. Fitzgerald, 1997 ME 207 ¶ 5, 701 A.2d 370, 372.

In this action Vincent is claiming that a surgeon, Melinda Molin, and a plastic surgeon, John Cederna, committed malpractice in a number of respects in connection with a mastectomy operation that was performed on September 14, 1999. Vincent's claims against Mercy are primarily based on the allegation that Mercy's nurses committed professional negligence by not taking appropriate action in connection with the process of obtaining informed consent to prevent Vincent from being subjected to an operation to which she had not consented. Vincent also claims that Mercy should be held vicariously liable for any professional negligence on the part of Dr. Molin.

Once again, the summary judgment submissions by the parties are far from ideal.[1] One might question whether the nine-page, 102-paragraph statement of material facts submitted by Mercy constitutes a "short and concise" statement as required by Rule 56 (h)(1). Any deficiencies in this respect, however, are eclipsed by the 67-page responding statement of facts submitted by Vincent. Fifty-four pages of that submission consist of responses to Mercy's Statement of Material Facts. Many of those pages contain largely unfounded objections and motions to strike contending that Mercy's statements are not supported by record references.[2] Some of the remaining pages contain lengthy recitations of portions of the record which are favorable to

---

[1] See order filed June 10, 2004 on defendant Molin's motion for partial summary judgment.

[2] In each case, the court has reviewed the record reference in question. In the majority of cases Vincent's objections are without merit. See, e.g., Vincent's objections to ¶¶10, 24-26, 32-34, 36, 39, 41, 54, 58, 65, 73, 76, 79, 86 of Mercy's SMF.

Vincent's case, whether or not those are in any way responsive to the specific numbered paragraphs which Vincent is purportedly addressing.[3] The remaining thirteen pages of Vincent's Statement of Material Facts consist of 103 paragraphs of additional facts submitted by Vincent.

Notwithstanding the deficiencies in the parties' submissions, the court has considered the factual statements submitted by the parties, the record support (or lack of same) for the facts asserted, and the respective objections of the parties as to whether evidence is admissible. In ruling on this motion, it has disregarded any factual statements not supported by the cited record references or not supported by admissible evidence.[4]

Because the vicarious liability issue is more straightforward, it will be considered first.


1.    Vicarious Liability - Agency

The court concludes that there is no dispute that Dr. Molin is an independent contractor rather than an employee of Mercy Hospital. As Vincent points out, however, that does not necessarily end the inquiry as to whether Molin was nevertheless an agent of Mercy. Notwithstanding the existence of an independent contractor relationship, a party can expressly or impliedly authorize someone to act as its agent by manifesting

---

[3] See, e.g., Vincent SMF ¶¶ 2-5, 7, 9, 33-35, 37, 51, 58, 60, 63-64, 82-85, 90-92. In those instances where she is on target, Vincent has raised a number of genuinely disputed facts. However, her consistent approach has been to employ a blunderbuss instead of the rifle contemplated by Rule 56.

[4] The court has undertaken this exercise notwithstanding the problems presented by the parties' submissions for two reasons. First, the trial of this case has the potential, with three defendants and an expected trial length of longer than one week, to be unwieldy, and if there are issues or parties that should be eliminated prior to trial, it is in the interest of clarity and efficiency to do so. Second, since the majority of deficiencies are attributable to Vincent, who is opposing summary judgment, it would be unfair to penalize Mercy as the movant by declining to consider the motion prior to trial.

consent that the person act on its behalf and subject to its control. See, e.g., Libby v. Concord General Mutual Insurance Co., 452 A.2d 979, 891-82 (Me. 1982). No evidence has been offered that Dr. Molin was ever expressly authorized to act as Mercy's agent, but Vincent argues that there is a genuine issue for trial as to whether Dr. Molin was impliedly authorized to act as Mercy's agent.

The court disagrees. Looking to the factors cited in Legassie v. Bangor Publishing Co., 1999 ME 180 ¶6, 741 A.2d 442, 444 and n.1., which both sides have cited in their memoranda, the "vital issue" is whether the hospital controlled, or had the right to control, the manner in which Dr. Molin performed her duties. Id., quoting Timberlake v. Frigon & Frigon, 438 A.2d 1294, 1296 (Me. 1982). To rebut Mercy's showing that it did not control or have the right to control Dr. Molin, see Mercy's Statement of Material Facts (SMF) filed February 17, 2004, ¶¶88-97, Vincent cites only two pieces of evidence relevant to the issue of control: a hospital policy requiring physicians to obtain informed consent and a nurse's testimony that there was also a of hospital policy calling for an examination within 30 days of surgery. See Vincent's Opposing SMF filed March 12, 2004, ¶¶93-94, citing to Brown Dep. 19; Silverman Affidavit ¶14 and Molin Dep. 79.[5] The existence of such policies does not constitute the kind of control that would make Dr. Molin an agent of the hospital.

Given the history of freedom from control enjoyed by doctors, the Law Court has recognized that they "have traditionally been considered independent contractors". Gafner v. Down East Community Hospital, 1999 ME 130 ¶43, 735 A.2d 969, 979. See Andrews v. Davis, 128 Me. 464, 469, 148 A. 684, 680 (Me. 1930), quoting Pearl v. West End Bay, 176 Mass. 177, 179, 57 N.E. 339 (1900) (Holmes, J.). Under these circumstances, the court has some doubt that it needs to consider the other factors cited in the Legassie

---

[5] None of the other portions of the record cited by Vincent in response to ¶¶88-97 of Mercy's SMF have any bearing on the issue of control.

4

case as relevant to the determination of whether a specific occupation creates an agency or independent contractor relationship. In the court's view, Legassie primarily addresses the issue of how to evaluate an unknown job category, not a known profession.

Nevertheless, even if all the Legasse factors are scrutinized, the facts offered by Vincent are insufficient to create a disputed issue for trial in light of lack of Mercy's control over Molin and the traditional independent contractor status of doctors.[6]

2.    Vicarious Liability – Apparent Agency

Whether or not Dr. Molin was actually an agent of Mercy Hospital, Mercy can be held vicariously liable for her negligent acts if Mercy's conduct justifiably led Vincent to believe that Dr. Molin was the hospital's agent. See Steelstone Industries v. North Ridge Ltd., 1999 ME 132 ¶13, 735 A.2d 980, 983; Williams v. Inverness Corp., 664 A.2d 1244, 1246 (Me. 1995); Restatement, Second, Agency §§27, 267 (1958). On this issue the court concludes that there is a disputed issue of fact for trial. Although the evidence in the summary judgment record is far from detailed on this issue, there is evidence that Dr. Molin was the director of the Mercy Hospital Breast Health Resource Center, that Dr. Molin's office was located in Mercy Hospital, that Dr. Molin was understood by Vincent to be the head of Mercy's breast cancer center, and that Vincent relied on Dr.

---

[6] In her legal memorandum, Vincent faults Mercy for not tendering the written contract between Mercy and Melinda Molin, M.D., P.A. and suggests that Mercy has thereby failed to negate the possibility of control. Given the showing made by Mercy in the Silverman affidavit, however, it was Vincent's burden to establish that there is a genuine issue for trial, both as to agency generally and as to control specifically. Vincent has had an opportunity to obtain the agreement between Mercy and Dr. Molin's professional services corporation in discovery. If she had not obtained that document in discovery but considered it to be relevant to Mercy's summary judgment motion, she could have sought to delay the summary judgment motion to obtain that agreement under Rule 56(f).

5

Molin's connection with Mercy. See Vincent's Opposing SMF ¶88, citing Molin Dep. 8, 10, and Vincent Dep. 38, 78-79.[7]

If Mercy vested Dr. Molin with the title of director of the "Mercy Hospital Breast Health Resource Center," there is an issue for trial as to whether Marcy led Vincent to justifiably believe that Dr. Molin was an agent of the hospital. On an apparent agency theory, Mercy's motion for summary judgment is denied with respect to count VI of the complaint.

3.      Direct Liability for Negligence by Nurses

The remaining major issue on the pending motion is whether Mercy should be granted summary judgment on Vincent's claims that the Mercy Hospital operating room nurses engaged in professional negligence. That issue primarily revolves around the issue of expert testimony — whether the expert offered by Vincent with respect to the standard of care applicable to nurses is qualified to render an opinion that the Mercy nurses violated the applicable standard of care and if not, whether Vincent can establish the relevant standard of care in some other fashion.

Vincent argues that any challenges to her nursing expert's qualifications should be raised on a motion in limine rather than on a motion for summary judgment. The court is inclined to disagree. However, there is some doubt on this issue given that the standard for appellate review of a decision to exclude an expert differs from the standard for appellate review of a decision on summary judgment. See, e.g., General Electric Corp v. Joiner, 522 U.S. 136, 138-39 (1997)(decision to admit or exclude expert testimony renewed under abuse of discretion standard); Curtis v. Porter, 2001 ME 158

_____

[7] Vincent has also cited to a brochure for the Breast Health Resource Center at the Hospital, but the court agrees with Mercy that the brochure has never been authenticated and is not admissible evidence for purposes of summary judgment.

¶6, 784 A.2d 18, 21 (decision on motion for summary judgment reviewed for errors of law). The court does not have to resolve this issue because it concludes that even without the testimony of Danny Ducello (Vincent's nursing expert), Vincent has demonstrated the existence of a genuine issue for trial.

As an initial matter, the court agrees that it is questionable whether Ducello's expert opinions are admissible. Nurse Ducello is undoubtedly qualified to offer opinions with respect to nursing issues with which he is familiar but that does not mean he is qualified to offer opinions with respect to the standard of care applicable to operating room nurses and whether that standard has been violated. Ducello candidly admitted he has no operating room experience. Ducello Dep 27-28, 50, cited in Mercy's February 17, 2004 SMF ¶68.[8] Without such experience, there is a significant question whether Ducello is qualified to express opinions on how the general nursing principles he sets forth should have been applied by the circulating operating room nurses in this case.

This problem demonstrated by the fact that Ducello had to inquire of a representative of the American Association of Operating Room Nurses to determine whether there was any difference, with respect to informed consent, between the responsibilities of operating room circulating nurses and the responsibilities of other nurses. Ducello Dep. 64-66, cited in Vincent's March 12, 2004 SMF ¶80. Ducello testified that he was told in a phone call with a representative of the association that there was no difference. Id. In the court's view, Ducello's need to make this inquiry not

---

[8] Mercy faults Ducello for not knowing the difference between a subcertaneous and a simple mastectomy before he was contacted about this case. That is not a disqualifying factor given that Ducello's opinion is that nurses, when presented with unfamiliar medical procedures, are supposed to research them in order to be able to understand them. Moreover, while Mercy's own nursing expert had a general idea of the differences between the procedures in question prior to this case, he readily acknowledged that he did not know the different nuances of one procedure versus the other. McFaden Dep. 17.

7

only raises a substantial issue as to his qualifications to opine as to operating room nurses but also creates a significant hearsay problem. If the source of Ducello's understanding is a phone call with a nurse whose first name he thinks was Shirley, see Ducello Dep. 65, counsel for Mercy's ability to cross examine is significantly impaired. A crucial aspect of Ducello's opinion comes from a source whose qualifications and opinions cannot be tested.

Moreover, the court has no hesitation in concluding that expert testimony is necessary in this case. Compare Walter v. Wal-Mart Stores, Inc., 2000 ME 63 ¶31, 748 A.2d 961, 972. The issues of whether an operating room nurse should be familiar with the difference between a subcutaneous mastectomy and a simple mastectomy,whether such a nurse should take preventative action before surgery to guard against negligence or miscommunication by the surgeons, and whether such a nurse should intervene during surgery are not sufficiently obvious to be within the common knowledge of lay persons.[9]

The court does not need to decide if it can rule on the admissibility of Ducello's expert testimony on a motion for summary judgment, however, if Vincent has sufficiently established in some other fashion a factual issue for trial as to whether there was a breach of the standard of care. In opposition to summary judgment, in addition to the opinions of Ducello, Vincent has offered certain alleged admissions by the Mercy nurses themselves, several statements by Dr. Weinberg, and certain testimony by Mercy's own nursing expert, Glenn McFaden. The latter testimony was provided to the court pursuant to Vincent's motion to supplement her SMF with testimony that was

---

[9] In contrast to Forbes v. Osteopathic Hospital , 552 A.2d 16, 17-18 (Me 1988), this is not a case where the hospital filed an unsupported motion that did not rule out the possibility that the plaintiff could prevail without expert testimony. In this case, the Hospital's motion offers sufficient undisputed facts from which the court can conclude that the issue is one on which plaintiff can only prevail if she offers expert testimony.

8

unavailable at the time the motion was briefed. The court need not decide whether Vincent can use the testimony of the Mercy nurses themselves or the opinions of Dr. Weinberg[10] because it concludes that McFaden's testimony is sufficient to create a disputed issue for trial on whether the appropriate standard of care for nurses was violated.

Specifically, McFaden's testimony that a nurse should confirm with the patient what her understanding of the procedure is and should intercede during the operation to raise questions if the procedure departed from that consented to by the patient[11] raises a factual issue for trial under the circumstances of this case. In addition, McFaden also testified that, faced with inconsistent instructions from Drs. Molin and Cederna with respect to the nipple areola complex that Dr. Molin had preserved during her portion of the surgery, it would be reasonable to expect that a nurse would have raised the issue with Dr. Cederna. McFaden Dep. 123-24, cited in Vincent's Supplemental Opposing SMF ¶13.[12]

---

[10] Vincent's ability to offer admissions by the Mercy nurses, who have not been designated as experts, is problematic at best under Pitt v. Frawley, 1999 ME 5 ¶¶9-10, 722 A.2d 358, 361-62. With respect to Dr. Weinberg, Vincent has not on this record demonstrated that Dr. Weinberg is qualified to offer opinions with respect to nurses. In addition, while Weinberg opined that there was at least one breach of the standard of care, Weinberg Dep. 91, cited in Vincent's March 12, 2004 SMF ¶41, he did not offer any opinion that this breach caused injury to Vincent. Indeed, he appeared to adopt the position that what the nurses should have done was to place a post-operative incident report in the file, which would have been too late to prevent any harm to Vincent. Weinberg Dep. 95-96, cited in Vincent March 12, 2004 SMF ¶35.

[11] See McFaden Dep. 47, 100-01, 114-15, 131-32, cited in Vincent's Supplemental Opposing SMF filed May 14, 2004 ¶¶8-12, 14.

[12] Vincent also notes that McFaden testified it was not appropriate for the nurses to have accepted a history and physical examination form from Dr. Molin that was dated more than 30 days prior to surgery. McFaden Dep. 132, 134, cited in Vincent's Supplemental Opposing SMF ¶15. In and of itself, this would not raise a disputed issue for trial given the absence of evidence that this caused harm to Vincent. This is not a case where Vincent's physical condition or history had changed during the period between July 1999 and the September 1999 operation in a way that had a negative impact on the outcome of the procedure.

9

Given this testimony, the court will deny Mercy Hospital's motion for summary judgment with respect to count II of the complaint and will defer Mercy's challenge to Ducello's qualifications to be considered on a motion in limine.

4.     Other Issues

For the same reasons set forth in the court's prior order dismissing counts III and IV of the complaint against Dr. Molin, Mercy is entitled to summary judgment dismissing Vincent's claims of battery and intentional infliction of emotional distress as against Mercy. Indeed, while there is a disputed issue for trial with respect to Mercy's alleged failure to protect Vincent from negligent treatment by Drs. Molin and Cederna, there is no colorable argument that Mercy's nurses performed or participated in a medical procedure which they knew had not been consented to by Vincent. Similarly, no factual support has been offered for the proposition that Mercy's nurses performed any medical procedures against Vincent's will. These are the requisites for battery. See Woolley v. Henderson, 418 A.2d 1123, 1133 (Me. 1980). Similarly, Vincent has not raised a genuine issue for trial as to whether Mercy's actions were either intentional, reckless, extreme, or outrageous within the meaning of Restatement, Second, Torts §46, and summary judgment is therefore granted as to count IV.

The court also agrees with Mercy that Vincent has not stated a separate claim for negligent infliction of emotional distress nor raised a genuine issue for trial on such a claim. This requires that summary judgment to be granted for Mercy as to count V. This ruling will in no way preclude Vincent from recovery of damages for emotional distress if she prevails on Counts II and VI.

The entry shall be:

10

The motion by defendant Mercy Hospital for summary judgment is granted in part and denied in part. As to counts II (Negligence) and VI (Vicarious Liability for Dr. Molin), the motion is denied. As to counts III, IV, and V of the complaint (Battery, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress), the motion is granted and those counts are dismissed as against Mercy. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 23, 2004

_____
Thomas D. Warren
Justice, Superior Court

CHRISTIAN FOSTER ESQ
PO BOX 4803
PORTLAND ME 04112

287
04112-0287

RENEE INMAN ESQ
PO BOX 917
BANGOR ME 04402

OURTS
County
87
4112-0287

KAREN WOLFRAM ESQ
PO BOX 4803
PORTLAND ME 04112

COURTS
id County
ix 287
e 04112-0287


SANDRA ROTHERA ESQ
PO BOX 917
BANGOR ME 04402


GEORGE SCHELLING ESQ
PO BOX 917
BANGOR ME 04401


OURTS
County
87
112-0287


ROBERT NEWTON ESQ
PO BOX 9546
PORTLAND ME 04112

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

DANIEL LILLEY ESQ
PO BOX 4803
PORTLAND ME 04112

CLERK OF COURTS
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

PHILLIP COFFIN III ESQ
PO BOX 15215
PORTLAND ME 04112